# In the United States Court of Federal Claims

No. 13-476C
(Filed August 7, 2014)

```
* * * * * * * * * * * * * * * *
                               *
                               *
SILVER BUCKLE MINES, INC.,     *
                               *
                 Plaintiff,    *
                               *
           v.                  *
                               *
THE UNITED STATES,             *
                               *
                 Defendant.    *
                               *
* * * * * * * * * * * * * * * *
```

RCFC 12(b)(6) motion to dismiss;
Bureau of Land Management; 30
U.S.C. § 28f; unpatented mining claim
maintenance fee; statutory
interpretation; plain meaning; not
ambiguous; no absurd result; IOAA,
31 U.S.C. § 9701(b); voluntary
payment as affirmative defense

*Frank R. Siderius*, Siderius Lonergan & Martin LLP, Seattle, Washington, for plaintiff.

*James Sweet*, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were *Stuart F. Delery*, Assistant Attorney General, *Bryant Snee*, Acting Director, and *Deborah A. Bynum*, Assistant Director, all of Washington, D.C., for defendant.

## MEMORANDUM ORDER AND OPINION

WOLSKI, Judge.

The matter before the court is defendant's motion to dismiss this case for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC). For the reasons discussed below, defendant's motion is **DENIED**.

## I. BACKGROUND

Plaintiff Silver Buckle Mines, Inc. (Silver Buckle) is an Idaho corporation and holder of seventy-two active, unpatented lode mining claims in Idaho. Since 1993, the Bureau of Land Management (BLM or Bureau) has levied an annual maintenance fee on such unpatented mining claims under the authority of 30

U.S.C. § 28f.  Congress amended section 28f in 2011, apparently eliminating the maintenance fee on claims located before August 10, 1993, but BLM continued to exact the fee in 2012.  All of plaintiff's claims were located prior to August 10, 1993, and an annual maintenance fee was paid for each to BLM in 2012 for the 2013 assessment year.  Plaintiff seeks the return of these fees, alleging that they were illegally exacted.

## A.  Claim Maintenance and Section 28f

Before 1993, BLM required a minimum level of "assessment work" to be done on a claim annually in order for the claimant to remain eligible to hold the claim. Compl. at IV;[1] *see* 30 U.S.C. § 28.  The purpose of the assessment work was putatively to "insure the holder's good faith and to require diligent development" of resources.  Compl. at IV; *see also Chambers v. Harrington*, 111 U.S. 350, 353 (1884) ("The purpose [of section 28] was . . . to require every person who asserted an exclusive right to his discovery or claim, to expend something of labor or value on it as evidence of his good faith, and to show that he was not acting on the principle of the dog in the manger.").

In 1993, the assessment work requirement was modified by requiring the filing of an annual maintenance fee in lieu of performing work on the claim.  Compl. at V; *see* Omnibus Budget Reconciliation Act of 1993 (1993 Act), Pub. L. No. 103-66 § 10101, 107 Stat. 312, 405 (codified as amended at 30 U.S.C. § 28f) ("Such claim maintenance fee shall be in lieu of the assessment work requirement . . . .").[2] Section 28f was subsequently amended numerous times, though the substance of the provision remained essentially the same.

Most relevant to this action, in 2011, Congress changed the language and provided for differing treatment of unpatented placer claims, as opposed to unpatented lode mining claims, mill sites, and tunnel sites (collectively, "unpatented nonplacer claims").  Compl. at VI; *see* Consolidated Appropriations Act of 2012 (2012 Act), Pub. L. No. 112-74 § 430, 125 Stat. 786, 1047 (2011) (codified as amended at 30 U.S.C. § 28f).  After the amendment, section 28f(a)(1) --- which

---

[1]  The Complaint is formatted largely in sections numbered with roman numerals, rather than the paragraph format called for by this court's rules.  *See* RCFC 10(b) ("A party must state its claims or defenses in numbered paragraphs . . . .").  This opinion will refer to the sections of the Complaint according to the numerals assigned by plaintiff when practicable, and otherwise by page number.

[2]  The statutory text reproduced in the complaint does not match exactly the language of the 1993 Act, or any subsequently passed amendment to 30 U.S.C. § 28f, but appears to mingle several versions of the law.  *Compare* Compl. at V, *with* § 10101, 107 Stat. at 405.

governed only unpatented nonplacer claims --- apparently required a maintenance fee for those claims located on or after August 10, 1993, but not before that date. *See* 125 Stat. at 1047 (requiring fees only for claims "located . . . *on or after* August 10, 1993." (emphasis added)).  The result is thus that the most natural reading of the amended statute indicated that the maintenance fee had been eliminated for unpatented nonplacer claims located before August 10, 1993.[3]

The Bureau modified its regulations following the passage of the 2011 amendment to comply with certain provisions of the amendment --- for example, increased fees on unpatented placer claims --- but the new regulations did not reflect the date-of-location limitation for unpatented nonplacer claim maintenance fees found on the face of the amended law.  Compl. at VIII (citing Interim Final Rule on the Administration of Mining Claims and Sites, 77 Fed. Reg. 44155, 44155–58 (issued July 27, 2012) (codified at 43 C.F.R. pt. 3830) (interim final rule)). Consequently, BLM continued to demand maintenance fees for the 2013 assessment year on unpatented nonplacer claims located before August 10, 1993 despite the change in wording in section 28f(a)(1).  *Id.* at VII.

Thereafter, the law was once more amended on March 26, 2013, reinserting the word "before," so that section 28f(a)(1) again read "before, on, or after August 10, 1993."  *Id.* at IX; *see* Consolidated and Further Continuing Appropriations Act, 2013, Pub. L. No. 113-6 § 1403, 127 Stat. 198, 419 (codified at 30 U.S.C. § 28f).

## B.  The Present Action

Plaintiff filed its complaint in the Court of Federal Claims on July 16, 2013, asking for "judgment against the United States . . . for refunds of maintenance fees illegally exacted" by BLM from holders of pre-1993 unpatented nonplacer claims during 2012, when section 28f allegedly did not require the payment of maintenance fees for such claims.  Compl. at 8.[4]  In response, the government filed a motion to dismiss the case for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6).  Def.'s Mot. to Dismiss (Def.'s Mot.) at 1.[5]

---

[3]  For ease of reference, this opinion will at times refer to claims located before August 10, 1993, as "pre-1993" claims.

[4]  Silver Buckle's claims have been leased, and the lessee paid the required fees. The lessee assigned all rights to recover the fees to Silver Buckle.  Compl. at I.

[5]  Defendant's motion to dismiss makes passing reference to RCFC 12(b)(1).  *See* Def.'s Mot. at 1.  At oral argument, however, the government's counsel acknowledged that the reference to jurisdiction was "erroneous."  Tr. (Dec. 6, 2013) at 25.  This opinion will therefore only address the motion to dismiss under the rubric of RCFC 12(b)(6).

In its initial brief the government argued that plaintiff's suit should be dismissed for failure to state a claim on two independent bases: (1) that Congress intended to authorize the fee in spite of the clear language of the amendment which eliminated the fee for pre-1993 claims and sites; and (2) that plaintiff never objected to or protested the payment of the fee and is therefore unable to seek repayment. Def.'s Mot. at 4. In its reply paper, filed November 4, 2013, the government adduced an additional theory, namely, that the fee --- if not required by 30 U.S.C. § 28f --- was authorized by the Independent Offices Appropriation Act (IOAA), 31 U.S.C. § 9701(b). Def.'s Reply to Pl.'s Resp. to Def.'s Mot. to Dismiss (Def.'s Reply) at 6–7.

Because plaintiff was unable to address defendant's IOAA theory in its initial response paper, after oral argument was heard the Court allowed the parties to submit supplemental briefs on the applicability of the IOAA to the fee at issue. The Court has reviewed all of the briefs and the motion is now ripe for adjudication.

## II. DISCUSSION

### A. Jurisdiction

Plaintiff alleges jurisdiction in this court under 28 U.S.C. § 1491(a)(1) and describes its claim for refund of a purportedly illegal exaction as "founded upon an act of Congress," contending that an act of Congress has been misinterpreted by BLM to permit the imposition of maintenance fees which were collected and retained by the agency. Compl. at II. The government does not challenge the court's jurisdiction in this case.[6] Nevertheless, subject matter jurisdiction is a threshold determination, and it is incumbent upon any court to ensure that the litigants are properly before it prior to examining the merits of the case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). The parties or the court *sua sponte* may challenge the existence of subject-matter jurisdiction at any time. *Capron v. Van Noorden*, 6 U.S. (2 Cranch) 126, 127 (1804); *Folden v. United States*, 379 F.3d 1344, 1354 (Fed. Cir. 2004); *James v. United States*, 86 Fed. Cl. 391, 394 (2009); *see also* RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Plaintiffs bear the burden of proving by a preponderance of the evidence that the court possesses subject-matter jurisdiction. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). The court assumes that the uncontroverted allegations in the complaint are

---

[6] *See supra*, note 5.

true and construes those allegations in plaintiff's favor. *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).[7]

Here, plaintiff alleges that BLM claimed the authority to collect the fees pursuant to 30 U.S.C. § 28f(a)(1) and 43 C.F.R. § 3834.11.  Compl., Ex. B at 2, Ex. C at 10.  Whether or not those provisions actually authorized the BLM to collect the fees at issue, they were invoked by BLM to justify its exaction, and their interpretation is central to this cause of action.  This is sufficient basis for this court to take cognizance of this case under the clear precedent of this court's predecessor, the Court of Claims, and the Federal Circuit.  *See Clapp v. United States*, 127 Ct. Cl. 505, 513 (1954) ("[A] claim to recover an illegal exaction made by officials of the Government, which exaction is based upon a power supposedly conferred by a statute, is a claim 'founded upon any Act of Congress.'"); *see also Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1573 (Fed. Cir. 1996).

## B.  Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6)

When considering a motion to dismiss a case for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a court accepts all well-pled facts as true and draws all reasonable inferences in plaintiff's favor.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Pixton v. B & B Plastics, Inc.*, 291 F.3d 1324, 1326 (Fed. Cir. 2002); *Englewood Terrace Ltd. P'ship v. United States*, 61 Fed. Cl. 583, 584 (2004).  The granting of a motion to dismiss for failure to state a claim "is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy."  *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002); *see also Boyle v. United States*, 200 F.3d 1369, 1372 (Fed. Cir. 2000).  The motion will be denied when the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Three distinct issues emerge from the parties' briefs:  (1) whether the text of section 28f as it existed after the 2011 amendment can be either reformed or interpreted to allow BLM to demand maintenance fees for unpatented nonplacer claims located prior to August 10, 1993; (2) if not, whether BLM can --- independently of direct statutory authorization --- require fees for the abovementioned claims under the IOAA; and (3) regardless of the answer to the previous two questions, whether the voluntary payment doctrine bars recovery of

---

[7]  If a party submits evidence challenging the jurisdictional facts alleged in a complaint, those allegations are no longer assumed to be true.  *See James*, 86 Fed. at 394–95.  In this case, because defendant does not challenge this court's jurisdiction, no such evidence is presented.

any fees paid.  Each of these questions will be addressed in turn below, in light of the Rule 12(b)(6) standard.[8]

### *1.  Whether Section 28f Can Be Reformed or Interpreted to Allow BLM to Demand Maintenance Fees*

The government offers two arguments that section 28f --- in spite of the change to the language --- still provided BLM authorization to levy maintenance fees on all unpatented nonplacer claims for the 2013 assessment year.  First, the government contends that a review of the history of section 28f shows that Congress never meant to exempt pre-1993 unpatented nonplacer claims from the maintenance fee requirement.  Rather, the omission of the word "before" from the statute was the result of a scrivener's error which should be corrected in light of the history and purpose of section 28f.  Secondly, the government argues that the results that flow from dropping the word "before" from the provision are so absurd that Congress could not have meant to do so.

### **a.  Absent a gap or ambiguity, an agency cannot depart from the plain meaning of the lawfully enacted statutory text.**

From 1993 to 2011, maintenance fees were required of unpatented nonplacer claims "located *before, on or after* August 10, 1993."  30 U.S.C. § 28f(a) (2009) (emphasis added).  The 2011 amendment changed section 28f to require fees only for claims "located . . . *on or after* August 10, 1993."  125 Stat. at 1047 (emphasis added).  In 2013, Congress again amended the statute to provide for maintenance fees on claims "located . . . *before, on, or after* August 10, 1993."  127 Stat. at 419 (emphasis added).  This history, the government argues, demonstrates that Congress's omission of the word "before" in the 2011 amendment was inadvertent, and that statutory interpretation should be used to reform the statute.

The government relies heavily upon *Cass v. United States*, 417 U.S. 72 (1974).  In *Cass*, the Court was asked to decide whether a certain "rounding"

---

[8]  Plaintiff complains that defendant's arguments involving "Congressional intent, statutory ambiguity, inadvertent error . . . and voluntary payment . . . stray[] from challenging the facial plausibility of the factual allegations of the Complaint as must be done in a Rule 12(b)(6) challenge."  Pl.'s Resp. to Def.'s Mot. (Pl.'s Resp.) at 2.  The government correctly replies that, because "[s]tatutory interpretation involves a question of law[,] . . . such legal issues should be resolved in deciding a motion to dismiss."  Def.'s Reply at 3 (citations omitted); *see Barton v. Adang*, 162 F.3d 1140, 1144 (Fed. Cir. 1998).  If the Court were to determine that, as a matter of law, section 28f still required maintenance fees for pre-1993 unpatented nonplacer claims, then "the facts asserted by the claimant [would] not entitle him to a legal remedy," *Lindsay*, 295 F.3d at 1257, and the only appropriate course of action would be dismissal of the case.

provision applied in determining eligibility for military separation pay, or only applied in calculating the amount of pay to which an otherwise eligible reservist was entitled. *Cass*, 417 U.S. at 74. There was no indication in the statute that the rounding provision was limited to the calculation of pay, but the statute also used very specific wording regarding eligibility, requiring "at least five years" of service. *See id.* at 73 n.1. The Court thought the answer to the question "sufficiently doubtful to warrant . . . resort to extrinsic aids to determine the intent of Congress." *Id.* at 77. After seeking guidance from the history of the provision, the Court based its decision on the clear meaning of the prior version of the law at issue, in light of the fact that Congress "expressly stated that changes in language resulting from the codification were to have no substantive effect." *Id.* at 82.

Defendant also cites *Loughlin v. Ling*, 684 F.3d 1289 (Fed. Cir. 2012), in which the Federal Circuit considered whether an antedating provision in the patent statutes applied to another provision limiting the time frame in which a challenger could make a rival claim to "provoke an interference." *Id.* at 1291. The opinion spoke of "giv[ing] effect to the intent of Congress by looking not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy," *id.* --- but in holding that the antedating provision applied to the provision governing interferences, the court relied on the expansive language of the antedating provision which indicated no exceptions to its applicability; its broad application by the Court of Customs and Patent Appeals; and the consistent interpretation of the Board of Patent Appeals, *id.* at 1293–94.

What we learn from these cases and others cited by defendant,[9] is that resort to extrinsic evidence is warranted when a statutory provision is ambiguous. In each of these cases, however, there was either a patent or latent ambiguity that needed to be dealt with by looking beyond the bare words of the text. Here, the government has revealed no gap or ambiguity for interpretive tools to eliminate. Without a gap or ambiguity, there is nothing on which the canons of construction may operate.

Furthermore, even if the amended section 28f could somehow be considered ambiguous, defendant has not introduced any actual evidence that Congress did not intend to make any substantive changes to the provision, *cf. Cass*, 417 U.S. at 82, but infers the intent of Congress from the absence of evidence to the contrary, Def.'s

---

[9] *E.g.*, *Barela v. Shinseki*, 584 F.3d 1379, 1384 (Fed. Cir. 2009) (holding that a statutory provision that adjusted the rate of compensation due to the surviving spouse of a disabled veteran did not itself establish eligibility for such benefits by examining the provision within the context of the larger statutory scheme); *Dick v. Office of Pers. Mgmt.*, 216 F.3d 1353, 1355–56 (Fed. Cir. 2000) (deferring to the view of the Office of Personnel Management in picking one of two possible meanings of the term "is not reemployed," when the factual circumstances revealed a latent ambiguity in the statute which legislative history failed to resolve).

Mot. at 7 ("[I]f Congress had intended to exclude pre-1993 nonplacer claims from the maintenance fee in 2012, it would have indicated such an intent somewhere in the appropriations or the legislative history . . . ."). Congress did, however, rework the language of section 28f completely, setting up separate rate structures to govern different types of claims and sites. It is not implausible to infer from this change that, if Congress wanted to treat placer and nonplacer claims differently, it might have also wanted to differentiate between older and newer claims.

In the end, all that can be drawn from a review of the history of the provision is that Congress appears to have changed its mind. Thus, the government is simply asking the Court to read back into an unambiguous statute a word that was deleted by Congress, thus changing, not clarifying, the statute's meaning. "Interpretations" of this sort have not received a warm reception from the Supreme Court. For example, in *Lamie v. United States Trustee*, 540 U.S. 526 (2004), the Court stated,

> [Petitioner's] interpretation of the Act . . . would have us read an absent word into the statute. That is, his argument would result "not [in] a construction of [the] statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope." With a plain, nonabsurd meaning in view, we need not proceed in this way. "There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted."

*Lamie*, 540 U.S. at 538 (quoting *Iselin v. United States*, 270 U.S. 245, 251 (1926) and *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978)); *see also W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 100–01 (1991) ("Where a statutory term . . . is ambiguous, we construe it to contain that permissible meaning which fits most logically and comfortably into the body of both previously and subsequently enacted law. . . . But where, as here, the meaning of the term prevents such accommodation, it is not our function to eliminate clearly expressed inconsistency of policy and to treat alike subjects that different Congresses have chosen to treat differently."); *MORI Assocs., Inc. v. United States*, 102 Fed. Cl. 503, 537–40 (2011) (surveying the historical use of legislative history and finding that "under the prevailing Supreme Court doctrine the only rare and exceptional circumstances justifying a review of legislative history in the face of plain and unambiguous statutory text fall somewhere between never and when a plain reading would result in the absurd" (internal quotation marks omitted)).

A federal court cannot reform the clear language of a statute based simply on its view of statutory history when there is no ambiguity to be found in the text. With respect to the year 2013 assessment fee, section 28f clearly made no allowance for a maintenance fee on pre-1993 unpatented nonplacer claims. By requiring the payment of such fees, therefore, BLM went beyond the authority granted by section 28f.

### b.  Implementing the plain language of the statute does not result in absurdity or interfere with the statute's purpose.

Relatedly, the government argues that the Court should not countenance a reading of the statute that would "lead to absurd results or would thwart the obvious purpose of the statute." Def.'s Mot. at 6 (quoting *Comm'r v. Brown*, 380 U.S. 563, 571 (1965)).[10]  The government contends that putting the statute into effect according to its plain terms would cause a loss of revenue to BLM.  Def.'s Mot. at 7–8.  Plaintiff responds that the government ignores the increased fees on placer claims which offset the reduction in fees on nonplacer claims.  Pl.'s Resp. to Def.'s Mot. (Pl.'s Resp.) at 5 & n.5.  Furthermore, the language of the 2012 Act seems to indicate that a reduction in maintenance fee revenues --- if that came to pass --- would result in no reduction of BLM's resources due to a corresponding increase in appropriations: the Act appropriates nearly $40 million, "*to be reduced by amounts collected* . . . from mining claim maintenance fees and location fees." 125 Stat. at 986 (emphasis added).  Regardless, even if the government were correct that the amendment did result in a loss of revenue to BLM, this does not reach the level of absurdity.  Whatever absurdity is, Congress reducing fees or agency budgets does not fall in that category.

The government also contends that eliminating maintenance fees for pre-1993 claims runs contrary to one of the statute's objectives, which is to eliminate stale claims.  On the other hand, the government makes the opposite argument that interpreting the language by its plain meaning would compel the enforcement of rules requiring assessment work and notice to BLM --- suspended by section 28f's maintenance fee provision --- and potentially result in the relocation or forfeiture of claims for which those requirements were not met.  Def.'s Mot. at 8–9 (citing 30 U.S.C. § 28, 43 U.S.C. § 1744, and 43 C.F.R. § 3836.15).  If the latter argument is correct, that could simply mean that Congress, particularly with regard to older claims, "intended to ensure continued development of mineral resources on public lands in the West and to discourage holding undeveloped mining claims purely for speculative purposes." *Id.* at 2 (citing H.R. Rep. No. 103-111, at 355 (1993)).  There is nothing absurd about a result consonant with the purpose of the statute, though it is far from clear that forfeiture would follow if plaintiff complied with the contrary regulations issued by BLM.

The government argues further that, if the maintenance fees are refunded as a result of this litigation, all unpatented nonplacer claims for which holders did not complete their assessment work and submit affidavits may be "abandon[ed] by operation of law." Def.'s Reply at 4–5.  Plaintiff responds that BLM would be

---

[10]  The next sentence of *Brown* is instructive, as well: "it is otherwise where no such consequences would follow and where . . . it appears to be consonant with the purposes of the Act." *Brown*, 380 U.S. at 571 (internal quotation marks omitted).

equitably estopped from declaring the claims forfeited because Silver Buckle complied with BLM's demand for a fee in lieu of assessment work in keeping with the terms of its 2012 regulation. Pl.'s Resp. at 6 & n.8. The government counters in turn by arguing that estoppel generally does not lie against the government; that Silver Buckle should be charged with knowledge of the statutory change; and that refund of the fee without any legal consequence would result in a windfall to plaintiff. Def.'s Reply at 4–5.

Whether equitable estoppel bars BLM from declaring plaintiff's claims forfeited for failure to comply with the statutory requirements --- rather than BLM's published regulations and explicit demands --- and whether plaintiff would reap a windfall if its fees were refunded need not be decided at this point in the litigation. The Court will limit itself to settling the meaning of the statute, not the non-absurd results that may flow from a particular reading.[11] Because the most obvious reading of the text does not lead to absurd consequences, or even interfere with the purpose of the provision, the Court finds no reason to depart from the plain meaning on this basis.

## 2. The Independent Offices Appropriation Act

The government's second argument is that the IOAA gives BLM independent authority to set the maintenance fees at issue here.[12] The IOAA provides that the

---

[11] The purpose of the 12(b)(6) motion is not to fashion a final legal and equitable remedy, but to decide whether there is enough substance in plaintiff's complaint to allow it to proceed to trial. After reviewing the evidence presented by the litigants at trial, the Court may appropriately consider the question of whether equitable estoppel may lie against the government under the facts of this case, a question that has been left open by the Supreme Court. See, for example, *United States v. Locke*, 471 U.S. 84 (1985), which involved the predecessor to the statutory provision at issue here. In *Locke*, the plaintiffs lost their mining claims by missing a filing deadline by one day after relying on the erroneous advice of a BLM employee. *Id.* at 90. Notably, the Court did not "express[] any view as to whether, as a matter of law, appellees could prevail on [an estoppel] theory" because it had not been raised in the court below. *Id.* at 89 n.7. As to the question of plaintiff reaping a windfall, the simple act of filing the paperwork required with the fees fulfilled at least the function of providing BLM with notice of claimants' intent to continue development. If qualifying assessment work were actually performed during the applicable period --- which seems likely since these are active claims, *see* Compl. at I --- there would be no windfall at all. But once again, this is not a matter for consideration in a motion to dismiss.

[12] Defendant did not introduce this argument until the filing of its reply paper. Arguments raised by a litigant for the first time in a reply are usually deemed waived. *Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002); *Ross-*

head of an agency, with some exceptions not relevant here, "may prescribe regulations establishing the charge for a service or thing of value provided by the agency." 31 U.S.C. § 9701(b) (2012). Though the IOAA's language is very broad, its grant of authority has been restricted to allowing agencies to recoup the direct and indirect costs of providing goods and services that accrue to the benefit of a particular applicant rather than the public at large. *Nat'l Cable Television Ass'n v. United States* (*NCTA I*), 415 U.S. 336, 341 (1974); *Bunge Corp. v. United States*, 5 Cl. Ct. 511, 515 (1984). In light of constitutional concerns about the exclusive authority of Congress to levy taxes, the Court in *NCTA I* read out of the IOAA provisions allowing for agencies to consider public policy and other factors in setting fees. *NCTA I*, 415 U.S. at 341; *Bunge*, 5 Cl. Ct. at 515.

The government explains that "mining claimants were, and are, willing to incur a cost --- whether that be paying a maintenance fee or performing assessment work --- in order to maintain their mining claims" and that "the potential future economic benefit that arose from maintaining Silver Buckle Mines' 72 mining claims accrued to Silver Buckle Mines specifically, and was not shared by society at large." Def.'s Sur-Reply at 5. It argues that this satisfies the requirements of *NCTA I* that "a fee imposed by an agency acting in its sovereign capacity must be incident to a voluntary act, and for a service or thing of value bestowing a benefit on the applicant not shared by members of society, in order to avoid being a tax." Def.'s Sur-Reply at 4 (citing *NCTA I*, 415 U.S. at 340–41). At the same time, the government acknowledges that the purposes of the fees are specifically to discourage speculation, Def.'s Mot. at 2, and to raise revenue for BLM, *id.* at 7. These latter two fee-setting rationales are prohibited by *NCTA I*, *see NCTA I*, 415 U.S. at 341, but that is not the end of the story. If the fees can be justified as the cost of providing a service that inures to the benefit of an identifiable recipient, the simple fact that the fees that will have the effect of providing incidental benefit to others and promoting a particular public policy is not dispositive. *See Seafarers Int'l Union of N. Am. v. U.S. Coast Guard*, 81 F.3d 179, 184–85 (D.C. Cir. 1996). The government must still demonstrate, however, that the fee is proportionate --- not to the value accruing to the claim holder --- but to the cost incurred by BLM in providing the service, and that the generally applicable IOAA does not conflict with a more specific fee setting provision.

The government argues that *Yosemite Park & Curry Co. v. United States*, 231 Ct. Cl. 393 (1982) distinguished "cases such as this where the Government was acting in its capacity as a landowner" and held that "'[a] cost-based system is not

---

*Hime Designs, Inc. v. United States*, 109 Fed. Cl. 725, 739 n.14 (2013). Plaintiff, however, did not move to strike the argument under the doctrine of waiver, and following oral argument plaintiff was given an opportunity to respond to the IOAA argument in a sur-reply, mitigating the harm that the *Novosteel* court identified in allowing novel arguments in the reply. *See Novosteel*, 284 F.3d at 1274.

required' and the fee amount instead can be based on the market value of the service or thing of value."  Def.'s Sur-Reply at 5–6 (quoting *Yosemite Park*, 231 Ct. Cl. at 408); *see also* Def.'s Reply at 6 n.2 ("Because the Government was acting in its capacity as a landowner, and not as a sovereign, the 2013 maintenance fee did not have to be reasonably based on costs").  *Yosemite Park*, however, relied on the contractual nature of the relationship between the litigants when it approved a fee based on the market value of the electricity produced by the government and sold to the plaintiff.  *Yosemite Park*, 231 Ct. Cl. at 407–08 ("In selling the electricity pursuant to a contract, the Government is not performing a uniquely governmental function; it is selling a Government-owned resource. . . . The Government can only assess the electric rates at issue here by virtue of a contract with the plaintiff, voluntarily entered.").  This case, by contrast, concerns government regulation of a real property interest owned by plaintiff.  *See United States v. Locke*, 471 U.S. 84, 105 (1985) (explaining that unpatented mining claims are a property interest over which "the Government retains substantial regulatory power").  No contract has been identified which grants the Bureau discretion to set maintenance fees according to the value of the claims to the claimants.

The IOAA was also generally not meant to apply where Congress has already authorized fees, in part because its provisions are written so that they may apply across a wide array of agencies and they may conflict with specific statutory provisions.  *See Bunge*, 5 Cl. Ct. at 515–16.  Here, the fee schedule amended by Congress under the 2012 Act was detailed and contained its own provisions for adjusting the fees over time.  *See* 30 U.S.C. §§ 28f, 28j.  By limiting the application of the maintenance fee to unpatented nonplacer claims located on or after August 10, 1993, in the 2012 Act, Congress set the fee for claims located before that date to zero as unambiguously as it set the fee for later located claims at $140 (as adjusted for inflation pursuant to section 28j).  To allow the agency to override the clear language of section 28f(a)(1) by reasoning that Congress "was silent on the issue of a 2013 maintenance fee for pre-1993 nonplacer claims," Def.'s Sur-Reply at 2, is to assume that if Congress wants the fee to be zero it must explicitly say so.  This is tantamount to saying that Congress has left a gap in section 28f(a)(1) to be filled by the agency, an interpretation that has already been rejected.  *See supra*, Part II-B-1-a.  The general provisions of the IOAA must not override more specific contrary statutory provisions in section 28f.  *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) ("[I]t is a commonplace of statutory construction that the specific governs the general . . . ."  ); *Arzio v. Shinseki*, 602 F.3d 1343, 1347 (Fed. Cir. 2010).[13]

---

[13] The government argues that even if section 28f did set the fee for unpatented nonplacer claims at zero, "the IOAA permitted the BLM to redetermine that fee consistent with the prescribed basis.  Since the $140 maintenance fee was not inconsistent with any maintenance fee set by section 28f, it was authorized by the IOAA."  Def.'s Reply at 7 (citing 31 U.S.C. § 9701(c)(2)).  The government seems to

The government also argues that it need not prove that BLM *did* rely on the IOAA to promulgate the fees, only that the IOAA gave it the authority to do so. *See* Def.'s Sur-Reply at 2 n.2. But, in a follow-up decision to *NCTA I*, the D.C. Circuit held that agencies are required to comply with specific procedures when setting fees under the authority of the IOAA. *See Nat'l Cable Television Ass'n v. FCC* (*NCTA II*), 554 F.2d 1094, 1104–06 (D.C. Cir. 1976); *Bunge*, 5 Cl. Ct. at 515 (referring to the "stringent procedural requirements" of the *NCTA II* decision). "In order for a reviewing court to determine that a fee has indeed been measured by 'value to the recipient,' the [agency] must make a public statement of the specific expenses which are included in the cost basis for that fee." *NCTA II*, 554 F.2d at 1104; *see also Seafarers Int'l Union*, 81 F.3d at 185 ("[T]he measure of fees is the cost to the government of providing the service, not the intrinsic value of the service to the recipient.").

Here, the interim final rule which defendant identifies as having set the fee for pre-1993 unpatented nonplacer claims makes no effort to explain "the specific items of cost and the criteria by which they are found to relate . . . to the service or benefit for which the fee is assessed." *NCTA II*, 554 F.2d at 1106. Rather, BLM's interim final rule, far from invoking the agency's authority under the IOAA or detailing its basis for levying a fee on pre-1993 unpatented nonplacer claims, stated that "[t]he law precludes the BLM from exercising discretion as to the level of fees or when they are due." Compl., Ex. C at 3. Indeed, it appears to the Court that the maintenance fees portion of the regulation which the interim final rule amended was issued under section 28f, not the IOAA, *see* 68 Fed. Reg. 61046, 61073 (issued Oct. 24, 2003) (identifying 30 U.S.C. § 28f, but not the IOAA, as among the sources of the authority for the maintenance fees regulations); and that the interim final rule did not adopt anew the fees for pre-1993 claims using the IOAA, but rather left these fees undisturbed although their statutory basis had been repealed.[14] The government's appeal to the IOAA is unavailing.

---

be arguing that, since $140 is the fee for unpatented nonplacer claims located *on or after* August 10, 1993, it is therefore a reasonable fee for unpatented nonplacer claims located *before* that date, and the fee it authorized for the latter is "redetermined . . . consistent with the prescribed bases." 31 U.S.C. § 9701(c)(2). This cannot possibly be a correct interpretation of the phrase "redetermined . . . consistent with the prescribed bases," because it would allow agencies to override any attempt by Congress to prescribe a hierarchy of fees that created differential treatment of persons or entities according to defined characteristics that do not bear on the cost of providing services. Rather, the phrase must mean that agencies may redetermine fees consistent with the basis Congress prescribed for that particular set of characteristics --- here, zero, for claims located before August 10, 1993.

[14] The government states that BLM did appeal to the authority of the IOAA in setting the maintenance fee by citing the IOAA in a regulation that sets forth a

### 3. *Voluntary Payment*

The government's final argument is that, by not protesting the payment, Silver Buckle made a voluntary payment and therefore cannot seek recovery.  Def.'s Mot. at 9.  Defendant relies primarily on the Supreme Court's holding in *United States v. Edmonston*, 181 U.S. 500 (1901).  Plaintiff responds that voluntary payment is an affirmative defense that may not be raised on a motion to dismiss, Pl.'s Resp. at 7–8; that the defense is rebutted here by a showing of coercion or duress, *id.* at 8–9; and that even voluntary payments may be recovered when the government's demand for payment is contrary to law, *id.* at 9.  Because the Court agrees with plaintiff's first response, it is unnecessary, for now, to deal with the defense on the merits.

Voluntary payment, as the government correctly notes, is not among the affirmative defenses enumerated under RCFC 8(c)(1), nor has it been formally recognized by this court or its predecessor, the Court of Claims, as an affirmative defense.  Rule 8(c)(1) by its very language, however, does not purport to provide an exhaustive list, and affirmative defenses not on the list have been recognized by this court.  *See* RCFC 8(c)(1) ("In responding to a pleading, a party must affirmatively state *any* avoidance or affirmative defense, *including* . . . ." (emphases added)); *Asset 42302 LLC v. United States*, 77 Fed. Cl. 552, 560 (2007).  Any defenses that "admit the allegations of the complaint but suggest some other reason why there is no right to recovery [or] concern allegations outside of the plaintiff's *prima facie* case that the defendant therefore cannot raise by simple denial in the answer" are generally considered affirmative defenses.  *Asset 42302*, 77 Fed. Cl. at 560 (quoting 5 Wright & Miller, Federal Practice & Procedure § 1271).  Here, the government's argument with respect to voluntary payment fits comfortably within the "admit and avoid" category.  *See* Def.'s Mot. at 9 ("Silver Buckle Mines merely alleges that the BLM continued to charge it above the statutory rate. . . . It does not allege that the payments were involuntary.").

As a cognizable affirmative defense, voluntary payment is not properly raised in a motion to dismiss unless "the applicability of the defense . . . appear[s] on the

---

schedule of fees.  Def.'s Sur-Reply at 2 n.2 (citing 43 C.F.R. § 3830.21).  The table of fees promulgated at 34 C.F.R. § 3830.21 covers several transactions involving a variety of service charges and processing, filing, and maintenance fees.  *See* 43 C.F.R. § 3830.21 (2012).  There is no suggestion that BLM did or could have relied on the IOAA in setting forth the specific fee at issue in this case merely because it cited the IOAA as one of more than a dozen sources of authority supporting the charges and fees set forth in the table.  Plaintiff also correctly notes that 43 C.F.R. § 3830.5 "defines a maintenance fee as a fee 'that 30 U.S.C. [§] 28f requires you to pay to hold and maintain mining claims or sites.'  This is not a fee established by BLM but rather by Congress."  Pl.'s Sur-Reply at 3.

face of the [complaint]." 5B Wright & Miller, *supra*, § 1357; *see Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1338 (Fed. Cir. 2013); *Lewis v. United States*, 99 Fed. Cl. 772, 781 (2011). In order to make this determination, it is necessary to first define voluntary payment and to identify any factors that may negate the defense. Though the affirmative defense of voluntary payment has not been treated in opinions from this court or its predecessor, it has been widely recognized and discussed in other federal and state courts. The Fifth Circuit has stated that

> [a] voluntary payment is "a payment made, without compulsion or fraud, and without any mistake of fact, of a demand which the payor does not owe, and which is not enforceable against him, instead of invoking the remedy or defense which the law affords against such demand, and when there has been no agreement between the parties at the time of payment that any excess will be repaid."

*Burnseed Oil Co. v. Grynberg*, 320 F. App'x 222, 231 (5th Cir. 2009) (quoting *Chris Albritton Const. Co. v. Pitney Bowes Inc.*, 304 F.3d 527, 531 (5th Cir. 2002)). This definition recognizes that compulsion, fraud, or lack of knowledge may vitiate the defense of voluntary payment. *Accord, e.g.*, *Essex Ins. Co. v. RMJC, Inc.*, 306 F. App'x 749, 755, (3d Cir. 2009) ("[T]he voluntary payment defense . . . is inapplicable when money is paid by a person without full knowledge of the facts." (internal quotation marks omitted)); *Best Buy Stores, L.P. v. Developers Diversified Realty Corp.*, Civ. No. 05-2310, 2010 WL 4628548, at *3 (D. Minn. November 04, 2010) (citing numerous cases supporting the proposition that "[t]he voluntary payment doctrine does not apply when a party makes payments under duress or compulsion, such as when that party must choose between paying or facing loss of possession of its property").

Because the pleadings are to be liberally construed in favor of the non-movant in a motion to dismiss, when an affirmative defense that may be negated is raised in such a motion, the best course of action is to allow the action to continue --- particularly when the complaint cannot be read as an affirmative admission of voluntary payment. *See* 5 Wright & Miller, *supra* § 1226 ("[I]f the defense is not absolute, [the court] may construe the pleadings liberally so as to obviate the defense and allow the action to proceed."). Therefore, the Court will not resolve at this point the government's contention that plaintiff is barred from pursuing its claim under the voluntary payment doctrine.

## III. CONCLUSION

For the reasons discussed above, defendant's motion to dismiss this case for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6)

is **DENIED**.  Defendant shall file a response to plaintiff's complaint on or by **Monday, October 6, 2014**.

**IT IS SO ORDERED.**

s/ Victor J. Wolski
**VICTOR J. WOLSKI**
Judge