# In the United States Court of Federal Claims

No. 13-476C
(Filed:  February 2, 2018)

```
*************************************
SILVER BUCKLE MINES, INC.,          *
     for Itself and as Representative of a *
     Class of Similarly Situated Parties, *
                                    *
               Plaintiff,           *     RCFC 12(c); Motion for Judgment on the
                                    *     Pleadings; Standing; Injury in Fact; Third
v.                                  *     Party Payment
                                    *
THE UNITED STATES,                  *
                                    *
               Defendant.           *
*************************************
```

Frank R. Siderius, Seattle, WA, for plaintiff.

Geoffrey M. Long, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Judge

     In this illegal exaction case, class representative Silver Buckle Mines, Inc. ("Silver Buckle") alleges that the United States Bureau of Land Management ("BLM") collected certain mining fees despite lacking statutory authority.  Currently before the court is defendant's motion to dismiss the complaint for lack of standing pursuant to Rule 12(c) of the Rules of the United States Court of Federal Claims ("RCFC"), or, alternatively, to amend the class definition.[1]  As explained below, Silver Buckle has suffered an injury in fact and meets the other requirements for standing to pursue its claim.  Further, the class definition is proper in its scope.  Accordingly, the court must deny defendant's motion in its entirety.

---

[1]  Because defendant did not contest standing prior to filing its answer, a motion to dismiss pursuant to RCFC 12(b) would be untimely.  RCFC 12(b); Peterson v. United States, 68 Fed. Cl. 773, 776 (2005).

## I. BACKGROUND

### A. Factual History

Silver Buckle holds seventy-two active, unpatented lode mining claims in Idaho that were located prior to August 10, 1993.[2]  Compl. § I, ECF No. 1.[3]  Mining claims are governed by the General Mining Act of 1872, ch. 152, 17 Stat. 91 (codified as amended at 30 U.S.C. §§ 22-54 (2012)), and section 314 of the Federal Land Policy and Management Act of 1976, Pub. L. No. 94-579, 90 Stat. 2743, 2769-70 (codified as amended at 43 U.S.C. § 1744 (2012)).  Since 1993, the BLM has collected, pursuant to 30 U.S.C. § 28f, annual maintenance fees on all unpatented mining claims.  Silver Buckle Mines, Inc. v. United States ("Silver Buckle I"), 117 Fed. Cl. 786, 789 (2014).  In 2011, the statute was amended to "eliminate the claim maintenance fee for [pre-1993] unpatented lode mining claims, mill sites, and tunnel sites (collectively, 'unpatented nonplacer claims')."[4]  Silver Buckle Mines, Inc. v. United States ("Silver Buckle II"), 132 Fed. Cl. 77, 82-83 (2017); accord Silver Buckle I, 117 Fed. Cl. at 789.  However, the BLM continued to require pre-1993 unpatented nonplacer claim holders ("pre-1993 claimants") to pay the fee in 2012 for the 2013 assessment year.  See Administration of Mining Claims and Sites, 77 Fed. Reg. 44,155 (July 27, 2012) (to be codified at 43 C.F.R. pt. 3830).

U.S. Silver Corporation ("U.S. Silver") leases Silver Buckle's mining claims pursuant to a net lease agreement.[5,6]  Pl.'s Suppl. Br. App. ¶¶ 3-4, ECF No. 57.  On August 10, 2012, U.S. Silver paid the maintenance fees on those claims for the 2013 assessment year.  Compl. § I.  The claim maintenance fees that U.S. Silver remitted directly to the BLM reduced the net income that

---

[2]  As in the prior reported opinions in this case, the court will refer to claims located before August 10, 1993, as "pre-1993" claims.  Claims that were located on or after August 10, 1993, i.e., claims that do not qualify as pre-1993 claims, are not at issue.

[3]  The complaint is formatted largely in sections numbered with Roman numerals, rather than the paragraph format called for by this court's rules.  See RCFC 10(b) ("A party must state its claims or defenses in numbered paragraphs . . . .").  This opinion will refer to the sections of the complaint according to the Roman numerals assigned by plaintiff when practicable, and otherwise by page number.

[4]  Placer mining claims are not at issue in this case.  Compare 30 U.S.C. § 28f(a)(1) (nonplacer claims), with id. § 28f(a)(2) (placer claims).  The Consolidated Appropriations Act of 2012, Pub. L. No. 112-74, § 430, 125 Stat. 786, 1047 (2011) (codified as amended at 30 U.S.C. § 28f(a)), eliminated the claim maintenance fee for pre-1993 nonplacer claims, but kept intact the claim maintenance fee for all placer claims.

[5]  U.S. Silver was previously known as Silver Valley Resources Corporation.  Decl. Supp. Pl.'s Resp. ¶ 5, ECF No. 54.

[6]  A "net lease" is a lease in which the lessee pays certain expenses directly in addition to paying rent to the lessor.  Lease, Black's Law Dictionary (10th ed. 2014).

Silver Buckle received from U.S. Silver.  Pl.'s Suppl. Br. App. ¶ 5.  In 2013, Congress updated 30 U.S.C. § 28f to again require annual maintenance fees from pre-1993 claimants.[7] Consolidated and Further Continuing Appropriations Act of 2013, Pub. L. No. 113-6, § 1403, 127 Stat. 198, 419 (codified at 30 U.S.C. § 28f).

## B.  Procedural History

Silver Buckle filed suit on July 16, 2013, seeking "judgment against the United States . . . for refunds of the maintenance fees illegally exacted" by the BLM in 2012 for the 2013 assessment year ("2013 maintenance fees").  Compl. 8.  Defendant moved for dismissal pursuant to RCFC 12(b)(6) on September 16, 2013, arguing in part that Congress did not intend to eliminate the maintenance fees for pre-1993 claimants in 2011.  Silver Buckle I, 117 Fed. Cl. at 790.  However, defendant did not contest jurisdiction.  Id. at 790 n.5 (noting defendant's acknowledgement that the passing reference to subject matter jurisdiction in its motion was "erroneous").  In an August 8, 2014 opinion, the court confirmed its jurisdiction over Silver Buckle's claim, id. at 791, and denied defendant's motion, id. at 798.  The parties then filed cross-motions for summary judgment, and Silver Buckle moved for class certification.  The parties also filed a joint preliminary status report in which they reported that "[n]either party [was] aware of any jurisdictional defect."  Joint Prelim. Status Report 1, Nov. 14, 2014, ECF No. 24.  Following oral argument and supplemental briefing, the case was reassigned to the undersigned on March 30, 2017.[8]

In a May 23, 2017 opinion, the court determined that Silver Buckle "is entitled to recover all 2013 maintenance fees paid," Silver Buckle II, 132 Fed. Cl. at 95, and that Silver Buckle had satisfied all of the requirements for class certification, id. at 104.  The court also declared that the class claim "concerns the 2013 maintenance fees paid on pre-1993 unpatented nonplacer claims," and defined the class as follows:

> With respect to an unpatented lode mining claim, unpatented mill site, or unpatented tunnel site located pursuant to the mining laws of the United States prior to August 10, 1993, for which a claim maintenance fee for such claim or site for assessment year 2013 was timely paid to the United States Secretary of the Interior on or before September 1, 2012, each and every person who, at the time of such payment, was the holder of all or any part of such claim or site, unless a waiver under 30 U.S.C. § 28f(d) pertaining to the claim or site was in place for assessment year 2013.

---

[7]  A detailed description of the background of this case is provided in both Silver Buckle II, 132 Fed. Cl. at 82-84, and Silver Buckle I, 117 Fed. Cl. at 789-90, and need not be repeated herein.

[8]  Defendant also assigned new counsel to this case while the parties' cross-motions for summary judgment and Silver Buckle's motion for class certification were pending.  Notice of Appearance, Mar. 6, 2017, ECF No. 46; Notice of Appearance, Dec. 27, 2016, ECF No. 45.

Id.  The court emphasized:

> The real party in interest regarding a particular claim is the claim
> holder.  Claim holders—not lessees or agents—are ultimately
> obliged because the applicable regulations place responsibility for
> paying the claim maintenance fees on the "claim holder." . . .
> Since the BLM requires each claim holder to pay the annual
> maintenance fees or risk forfeiture of the claim, the claim holder is
> the party entitled to recover against defendant.  A private
> agreement between a claim holder and a lessee or an agent . . . is
> beyond the jurisdiction of this court.

Id. at 96-97.  The court noted that, for claims held by multiple owners, any recovery "would be ratably apportioned among the owners."  Id. at 96 n.18.

On July 21, 2017, defendant filed a motion to dismiss for lack of standing and, alternatively, to amend the class definition.  Briefing was completed on December 4, 2017.  The court deems oral argument unnecessary.

## II.  STANDARD OF REVIEW

Defendant casts its motion to dismiss for lack of standing as a challenge to the court's subject matter jurisdiction that should be examined under the standards applicable to an RCFC 12(b)(1) motion.  See Def.'s Mot. 6-7, ECF No. 52.  Standing is an aspect of the case-or-controversy requirement outlined in Article III, Section 2 of the United States Constitution.[9] Arizonans for Official English v. Arizona, 520 U.S. 43, 64 (1997).  In a standing inquiry, the court examines "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."  Warth v. Seldin, 422 U.S. 490, 498 (1975).  Without standing, a litigant's dispute is not justiciable.  Fisher v. United States, 402 F.3d 1167, 1176 (Fed. Cir. 2005) (panel portion) (noting that justiciability "encompasses a number of doctrines under which courts will decline to hear and decide a cause," including the "doctrines of standing, mootness, ripeness, and political question").

The court's inquiry into the justiciability of a case is distinct from its inquiry into whether it has jurisdiction over the case's subject matter.  Powell v. McCormack, 395 U.S. 486, 512 (1969); Baker v. Carr, 369 U.S. 186, 198 (1962); Prasco, LLC v. Medicis Pharm. Corp., 537 F.3d 1329, 1335 n.3 (Fed. Cir. 2008); Murphy v. United States, 993 F.2d 871, 872 (Fed. Cir. 1993); see also Palmer v. United States, 168 F.3d 1310, 1313 (Fed. Cir. 1999) (describing subject matter jurisdiction as a court's "general power to adjudicate in specific areas of substantive law").  In other words, the court may find that it possesses jurisdiction over the

---

[9]  Although the United States Court of Federal Claims ("Court of Federal Claims") is an Article I court, it "applies the same standing requirements enforced by other federal courts created under Article III."  Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1359 (Fed. Cir. 2009) (internal quotation marks omitted).

subject matter of a case but that the dispute is nevertheless nonjusticiable.[10]  Thus, while standing is jurisdictional in the sense that it involves the court's power to adjudicate a case,[11] an RCFC 12(b)(1) challenge to subject matter jurisdiction is not the appropriate vehicle by which to dismiss a case for lack of standing.[12]

In sum, the proper lens with which to view defendant's motion is a challenge to the justiciability of Silver Buckle's claim.  As the court stated in Silver Buckle I, Silver Buckle's illegal exaction claim is squarely within the jurisdiction of the Court of Federal Claims.  117 Fed. Cl. at 791.  That analysis need not be repeated here.  Defendant's view of the case, however, is that Silver Buckle lacks standing because it did not pay the 2013 maintenance fees itself, Def.'s Mot. 13, and therefore did not "sustain[] some injury-in-fact from the Government's conduct,"[13]

---

[10]  In such situations, the court should dismiss the case as nonjusticiable and not for lack of subject matter jurisdiction.  See, e.g., Baker, 369 U.S. at 196 (holding that a case that is "unsuited to judicial inquiry or adjustment" should be dismissed for "a failure to state a justiciable cause of action" and not for "a lack of jurisdiction of the subject matter" (internal quotation marks omitted)); Oryszak v. Sullivan, 576 F.3d 522, 526-27 (D.C. Cir. 2009) (Ginsburg, J., concurring) (noting that when "a plaintiff makes a claim that is not justiciable . . . a court should dismiss the case for failure to state a claim" and that "it is important to distinguish among failure to state a claim, a claim that is not justiciable, and a claim over which the court lacks subject matter jurisdiction"); see also Kontrick v. Ryan, 540 U.S. 443, 455 (2004) ("Clarity would be facilitated if courts and litigants used the label 'jurisdictional' . . . only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority.").

[11]  See, e.g., Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102-10 (1988) (characterizing standing as a jurisdictional issue); Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1369 (Fed. Cir. 2002) ("[S]tanding is a threshold jurisdictional issue.").

[12]  RCFC 12(c), under which defendant brings the instant motion, provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  When a party challenges subject matter jurisdiction in a motion for judgment on the pleadings, the motion will be treated "as if it had been brought under [RCFC] 12(b)(1)." Shoshone Indian Tribe of the Wind River Reservation v. United States, 672 F.3d 1021, 1030 (Fed. Cir. 2012).

[13]  Defendant initially based its standing argument primarily on the alleged lack of standing of U.S. Silver to bring suit and the alleged invalidity of U.S. Silver's purported assignment to Silver Buckle of its apparent right to seek a refund of the 2013 maintenance fees that were paid on behalf of Silver Buckle, and made only a passing reference to Silver Buckle's standing in its own right.  See generally Def.'s Mot.  However, Silver Buckle emphasizes that it "has never asserted that its standing to bring this lawsuit is dependent upon U.S. Silver's standing" and that "[t]he validity or invalidity of [U.S. Silver's assignment to Silver Buckle] is of no consequence in this proceeding."  Pl.'s Resp. 7, ECF No. 53.  Therefore, defendant is correct

id. at 14.  Accord id. ("[M]ining claim holders . . . whose fees were paid by others . . . have no illegal exaction claim . . . includ[ing] instances where a nonplacer claim has several holders, and only one holder paid the 2013 maintenance fee.").  Defendant thus draws a "dramatic distinction between paying and nonpaying mining claim holders."  Id. at 15.  Silver Buckle agrees that "[t]he ultimate issue is whether [Silver Buckle] has standing as the holder of its claims."  Pl.'s Resp. 7 (emphasis added).

## III.  DISCUSSION

### A.  Standing Requirements

Standing is a "distinct concept[]" from real party in interest, although "both are necessary to prevail."  Anchor Savings Bank, FSB v. United States, 121 Fed. Cl. 296, 313 (2015) (internal quotation marks omitted).  Real party in interest may be waived because, while required by RCFC 17(a), it is not a jurisdictional issue.  Id.  Due to defendant's averment that "[t]he question of the real-party-in-interest is not relevant" to the instant motion, Def.'s Reply 3, and the court's prior determination that the real party in interest with respect to a particular mining claim is the holder of that claim (such as Silver Buckle), the real-party-in-interest issue need not be addressed further.  However, unlike real party in interest, standing is "not subject to waiver."  Lewis v. Casey, 518 U.S. 343, 349 n.1 (1996).

As the plaintiff, Silver Buckle "bears the burden" of establishing standing.  Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992); accord Anchor Savings Bank, 121 Fed. Cl. at 313.  If it cannot establish standing to assert its own claims, then it also lacks standing to seek relief on behalf of others as class representative.  O'Shea v. Littleton, 414 U.S. 488, 494 (1974); see also Rosen v. Tenn. Comm'r of Fin. & Admin., 288 F.3d 918, 928 (6th Cir. 2002) ("[A]t the outset of litigation, class representatives without personal standing cannot predicate standing on injuries suffered by members of the class but which they themselves have not or will not suffer." (relying on Warth, 422 U.S. at 501)).

Three elements must be met to satisfy the standing requirement:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'"  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court."  Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

---

that its "arguments regarding U.S. Silver's claim and the purported assignment" are "irrelevant" and need not be addressed.  Def.'s Reply 3, ECF No. 55.

Lujan, 550 U.S. at 560-61 (alterations and citations omitted).  In short, standing requires an injury in fact, causation, and redressability.  The injury in fact "must affect the plaintiff in a personal and individual way."  Id. at 560 n.1.

## B.  The Parties' Positions

Defendant posits that "[w]here a third-party paid the [2013] maintenance fee, no [injury in fact] has been sustained by the claim holder" and thus pre-1993 claimants "whose [2013 maintenance] fees were paid by others . . . have no illegal exaction claim."  Def.'s Mot. 14.  According to defendant, Silver Buckle "itself has suffered no injury, and it therefore lacks standing."[14]  Def.'s Reply 3.  Defendant emphasizes that Silver Buckle's "pockets are as full as they were before U.S. Silver paid the [2013] maintenance fee[s]," and that any risk that Silver Buckle would forfeit its mining claims for nonpayment of the 2013 maintenance fees has passed because the 2013 maintenance fees were indeed paid.[15]  Id. at 4.  Defendant also remarks that Silver Buckle cannot rely on the potential for claim forfeiture as an injury in fact for standing purposes because claim forfeiture is not at issue in this case.  Id. at 4-5.

Silver Buckle contends that all pre-1993 claimants suffered an injury in fact, including those for whom the 2013 maintenance fees were paid by a third party, because "[i]t is not the lessee or agent who faces a risk of adverse consequences should the demanded fee not be paid."  Pl.'s Resp. 11.  Silver Buckle avers that, for example, a property owner can be subjected to a tax lien if a tenant fails to pay property taxes as called for in the lease.  Id.  In the instant case, Silver Buckle notes that all pre-1993 claimants suffered an injury because they risked forfeiture of their claims in the event the 2013 maintenance fees were not paid.  Id.  Since the BLM "required" the 2013 maintenance fees to be paid, Silver Buckle maintains, each pre-1993 claimant was subjected to an illegal exaction.  Id.

In its supplemental brief, defendant argues that Silver Buckle failed to demonstrate any "monetary harm" in its complaint, and therefore dismissal is required.  Def.'s Suppl. Br. 2, ECF No. 58.  Defendant also repeats its argument that any risk of claim forfeiture had already passed

---

[14] Defendant also avows that U.S. Silver, as Silver Buckle's lessee, would not have standing in this case because it was under no statutory or regulatory compulsion to pay the 2013 maintenance fees.  See Def.'s Mot. 9.  Defendant is correct.  Cf. Robinson v. United States, 95 Fed. Cl. 480, 484 (2011) (explaining that, with exceptions not relevant here, "a third-party payer of another's tax liability" lacks standing to bring a tax refund suit).  Of course, the full import of defendant's view in the instant case is that nobody would have standing to bring an illegal exaction claim with respect to the 2013 maintenance fees that were remitted to the BLM by third parties on behalf of pre-1993 claimants.

[15] Defendant's position that any risk of claim forfeiture has passed is a reversal of its earlier position (advanced by different counsel) that Silver Buckle "could potentially face forfeiture of its pre-1993 unpatented nonplacer claims in the event the 2013 maintenance fees are recouped."  Silver Buckle II, 132 Fed. Cl. at 94.

by the time Silver Buckle filed its complaint, and thus Silver Buckle faced no actual or imminent injury at that time.  Id. at 3.

Meanwhile, in its supplemental brief, Silver Buckle describes the nature of its net lease with U.S. Silver (who paid the 2013 maintenance fees directly to the BLM), and attaches a sworn declaration from its corporate secretary.  Silver Buckle highlights the "excessive offset to royalty payments due under the lease" as a result of the 2013 maintenance fees—i.e., a "decrease in the royalty payment" it was owed.  Pl.'s Suppl. Br. 2.  Silver Buckle characterizes the reduced income as a "concrete and particularized" injury sufficient for standing purposes, arguing that "[t]he illegal exaction directly affects the amount of royalty payments received by [Silver Buckle] from its lessee."  Id. at 3.  Further, Silver Buckle observes that it was the target of the BLM requirement, and that payment of the maintenance fees by a third party does not make its illegal exaction claim "'derivative' to a claim of its lessee."  Id. at 4-5.

### C.  Silver Buckle Has Suffered an Injury in Fact

The court agrees with defendant that Silver Buckle cannot point to the potential for claim forfeiture as an injury in fact for standing purposes in the instant case.  As the court explained in its summary judgment ruling, "whether [Silver Buckle] faces a risk of forfeiture on its mining claims is beyond both the scope of this case and the court's jurisdiction."  Silver Buckle II, 132 Fed. Cl. at 94.  Therefore, to the extent that the risk of claim forfeiture constitutes an injury in fact, it cannot be redressed by a favorable decision in this case, and thus the third element for establishing standing—redressability—could not be met.

Defendant is also correct that Silver Buckle is required to demonstrate standing "at the pleading stage"—i.e., in its complaint.  Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016).  While defendant correctly states the law, it misses the mark in its application because Silver Buckle explained, at the outset of its complaint, that its 2013 maintenance fees were paid.  Compl. § I.  Contrary to defendant's averments, it is irrelevant that Silver Buckle's 2013 maintenance fees were paid by a third party.  A third-party payment is attributable to the person or entity responsible for making such payment—in this case, the claim holder.  Cf., e.g., Neb. Dep't of Revenue v. Loewenstein, 513 U.S. 123, 134 (1994) (focusing on the "substance and economic realities" of the transaction at issue).  Ensuring that there is a payment at all is a matter solely between the claim holder and the BLM.  Meanwhile, the mechanics of how a payment is effected—and, by extension, how any concomitant refund is ultimately distributed or apportioned—is a private matter between the responsible person or entity, i.e., the pre-1993 claimant, and any third parties involved.

An appropriate analogy to this illegal exaction case is a tax refund action because "[t]he classic illegal exaction claim is a tax refund suit alleging that taxes have been improperly collected or withheld by the government."  Norman v. United States, 429 F.3d 1081, 1095 (Fed. Cir. 2005).  In the tax context, employers are required to withhold income and other taxes from the wages of their employees (thus reducing the employees' take-home pay), and then must pay those taxes to the government.  26 U.S.C. §§ 3402(a)(1), 3403 (2012).  Such withholding remittances are "not taxes in their own right, but methods for collecting the income tax."  Baral

v. United States, 528 U.S. 431, 436 (2000).  Employees then receive a credit against their income tax liability for the amount of the taxes withheld.  26 U.S.C. § 31; see also 26 C.F.R. § 1.31-1 (2017) ("If the tax has actually been withheld at the source, credit or refund shall be made to the recipient of the income[, who is] the person subject to tax . . . .").  Taxpayers are thus treated as having paid the taxes that are paid to the government on their behalf by their employers, a third party.  While this construct certainly supports Silver Buckle's own standing—after all, Silver Buckle's income was offset by the 2013 maintenance fees paid on its behalf that Silver Buckle was required to pay—this construct also supports the general notion that payments made on behalf of an individual or entity responsible for such payments are attributable to the responsible individual or entity, and not to the third party transmitting the payment.

The United States Court of Appeals for the Federal Circuit ("Federal Circuit") instructs that illegal exaction claims are situations where "the government required payment to it 'directly or in effect.'"  Aerolinas Argentinas v. United States, 77 F.3d 1564, 1573 (Fed. Cir. 1996) (emphasis added).  The Federal Circuit highlighted the payment of funds "to others at the direction of the government to meet a governmental obligation" as an example of an effective payment, and explained that it was substantively the same as if "money was paid directly to the government."  Id.  Similarly, a payment to the government by a third party is effectively and substantively made by the individual or entity required to pay the government, and thus it should be treated as such.

In any event, Silver Buckle has identified a pecuniary injury it has suffered:  decreased income as a result of the BLM's ultra vires requirement to pay the 2013 maintenance fees.  Silver Buckle explained, at the outset of its complaint, that its lessee paid the 2013 maintenance fees.  Compl. § I.  Inartfully drafted as it may have been, Silver Buckle's description of the transaction sufficiently alleged, by implication, that Silver Buckle was impacted financially.  Silver Buckle has appropriately responded to defendant's standing challenge by supplying a declaration describing how the 2013 maintenance fees that were illegally collected reduced its bottom line.  In other words, contrary to defendant's assertions, Silver Buckle's pockets were not "as full as they were," Def.'s Reply 4, before the 2013 maintenance fees were paid.

Further, Silver Buckle's injury is concrete, particularized, and actual.  The maintenance fees were a sum certain, specifically required of Silver Buckle, and actually paid.  In short, Silver Buckle has established that it has satisfied the injury-in-fact element of standing.

### D.  Causation and Redressability Are Undisputed

Having demonstrated that it suffered an injury in fact, Silver Buckle must still establish causation and redressability.  There is no dispute that the 2013 maintenance fees were paid because of the BLM's imposition of the fees, which is the challenged action at issue in this case.  Further, there is no dispute that Silver Buckle will receive redress—i.e., a refund of the fees—through a favorable outcome.  Accordingly, Silver Buckle has satisfied the causation and redressability elements of standing.

Therefore, Silver Buckle has standing to pursue its claim.

## E.  The Class Definition Is Appropriate

The court now turns to the class definition.  Defendant argues in the alternative that the class definition improperly includes pre-1993 claimants who did not pay the 2013 maintenance fees directly, and suggests that the class definition be amended to include only those claim holders who "actually paid" such fees.  Def.'s Mot. 15.  Defendant posits that its proposed definition of the class "is consistent with the Court's holding that 'current or former claim holders who did not pay the 2013 maintenance fees, whether because they did not hold the claims in 2012 or simply failed to pay the fees, are excluded from the class.'"  Def.'s Reply 2 (quoting Silver Buckle II, 132 Fed. Cl. at 97).

Defendant takes the court's statement in its class certification ruling out of context.  The class definition, which was described in the paragraph immediately preceding the source of the quotation, encompasses holders of claims "for which a claim maintenance fee . . . was timely paid."  Silver Buckle II, 132 Fed. Cl. at 97.  Further, in the sentence immediately following the source of the quotation, the court reiterated that only holders of claims "for which [the 2013 maintenance] fees were actually paid" are included in the class.  Id.  In other words, class membership turns on whether or not the 2013 maintenance fees were paid, directly or indirectly.  Defendant's observation that "[t]his class includes any mining claim holder so long as the claim maintenance fee 'was timely paid' by someone—not necessarily the holder," Def.'s Reply 14, is absolutely correct, and is the proper scope of the class.

Accordingly, the class definition as currently constituted is appropriate because, as explained above, any maintenance fees received by the BLM are attributable to the claim holder.  Defendant's distinction between pre-1993 claimants who themselves paid the fees and those whose fees were paid by others is therefore moot.  Moreover, the class definition does not hinder judicial economy because only two facts need to be ascertained with respect to a particular claim:  (1) whether the 2013 maintenance fees were timely paid (i.e., on or before September 1, 2012), and (2) the identity of the holder(s) of such claim at the time of payment.  Both facts can be confirmed via a simple query of BLM records.  No unique factual determinations are necessary.

## IV.  CONCLUSION

The court has considered all of the parties' arguments.  To the extent not discussed herein, they are unpersuasive, without merit, or moot.

Silver Buckle suffered an injury in fact that was caused by the improper actions of the BLM, and will receive redress through a favorable outcome in this court.  Moreover, payments made on behalf of an individual or entity by a third party are, in substance, made by the individual or entity, and are to be treated as such.  Accordingly, Silver Buckle has standing to pursue its claims, and the class definition is proper in its scope.

Therefore, the court **DENIES** defendant's motion to dismiss and **DENIES** defendant's alternative motion to amend the class definition.  The parties shall confer and then, **no later than Friday, March 2, 2018**, file a joint status report proposing a plan to satisfy the notice requirements of RCFC 23(c)(2) and suggesting a schedule for further proceedings.

     **IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge
